Filed 6/18/26  Ayala v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ADAM GABRIEL AYALA,<br><br>　　　Petitioner,<br><br>　　　　　v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>　　　Respondent;<br><br>THE PEOPLE,<br><br>　　　Real Party in Interest. | F089758<br><br>(Super. Ct. No. CR-19-009194)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for writ of mandate.

Allen G. Weinberg, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Hannah Janigian Chavez, Deputy Attorney General, for Real Party in Interest.

-ooOoo-

---

[*]　　Before Hill, P. J., Peña, J. and Harrell, J.

## **INTRODUCTION**

In 2021, petitioner and defendant Adam Gabriel Ayala (defendant) was convicted after a jury trial of first degree residential burglary, battery on a fellow parent, and assault with force likely to produce great bodily injury.  He admitted four prior strike convictions and was sentenced to eight years plus 25 years to life.  The judgment was affirmed on direct appeal.

In 2023, defendant filed a motion in the trial court for postjudgment discovery pursuant to Penal Code[1] section 1054.9, in advance of filing a petition for writ of habeas corpus.  Defendant alleged he was arrested, charged, and convicted as a result of racial bias by the police department and the district attorney, and that his defense counsel was prejudicially ineffective.

In 2025, the trial court partially granted and denied defendant's discovery motion.  Defendant filed a notice of appeal from that ruling.  Appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record.  After appropriate notice, defendant did not file a supplemental brief on his own behalf.

As will be explained below, a party must seek review of the trial court's denial of a section 1054.9 motion for postconviction discovery by filing a petition for writ of mandate rather than an appeal.  (*In re Steele* (2004) 32 Cal.4th 682, 688 (*Steele*).)  However, we exercise our discretion to treat this matter as a petition, review the record, and find the trial court did not abuse its discretion.

## **FACTS[2]**

"[Defendant] and K.B. dated for about two years and broke up in October 2018, shortly after K.B. became pregnant with their [child].  After their breakup, [defendant]

---

[1]     All further statutory citations are to the Penal Code unless otherwise indicated.

[2]     After notice to the parties and without objection, this court takes judicial notice of the records before this court in *People v. Ayala* (F082983; trans. to Court of Appeal, First

occasionally spent the night at K.B.'s apartment, and they saw each other in the course of co-parenting the child. At the time of the events giving rise to this case, [defendant] did not have K.B.'s permission to enter her apartment.

"On the evening of September 24, 2019, K.B. was spending time at her apartment [in Modesto] with her current boyfriend [J.P.], whom she had been dating for a few weeks, and with her [child]. K.B. had made her boyfriend a 'birthday basket' containing beer, a card, and other items, and it was sitting on her kitchen table. [Defendant] came over that night about 10:00 p.m., saw K.B. and her boyfriend sitting outside her apartment on the steps, and walked past them inside. According to K.B., [defendant] was rude, aggressive, and angry. After she told him to leave, [defendant] took a beer from the basket, walked out, and threw the beer into the apartment complex's swimming pool." (*People v. Ayala*, *supra*, A165860).)

"After [defendant] left, K.B. and her boyfriend eventually went to sleep in K.B.'s bedroom; the adults were in the bed while the [child] slept in a crib next to the bed." (*People v. Ayala*, *supra*, A165860.)

Sometime before 3:50 a.m., defendant returned to K.B.'s apartment and he "kicked open K.B.'s locked front door, breaking the door frame. He entered the bedroom and went to K.B.'s boyfriend, who was laying on the bed, and punched him in the face.

---

App. Dist. on Aug. 9, 2022); *Ayala v. Superior Court* (Mar. 21, 2024, F087169) [nonpub. opn.]; and *Ayala v. Superior Court* (Sept. 4, 2025, F089679) [nonpub. opn.].

We also take judicial notice of the nonpublished opinion filed by the Court of Appeal, First Appellate District, Division Two, in *People v. Ayala* (Nov. 7, 2022, A165860) [nonpub. opn.]), that affirmed defendant's judgment on direct appeal.

In that opinion, the appellate court stated that "[b]ecause our task is to review the record in the light most favorable to the verdict, the facts presented here are taken largely from the prosecution's evidence, but we note factual disputes and conflicting evidence where relevant." (*People v. Ayala*, *supra*, A165860, fn. 2.) The following factual statement is thus taken from both the nonpublished opinion and the reporter's transcript of defendant's jury trial.

The boyfriend had been awakened by the sound of [defendant] breaking the door frame, but he lost consciousness as a result of the punch. [Defendant] went to the other side of the bed and punched K.B. in the face. K.B. pushed [defendant] out of the bedroom and into the hallway to get him away from the sleeping child. [Defendant] threw K.B. against the wall and choked her neck with one hand. K.B.'s boyfriend regained consciousness and came out of the bedroom, where he saw K.B. on the floor screaming, with a bloody face, and [defendant] standing over her and kicking her. The boyfriend and [defendant] fought, with [defendant] putting the boyfriend in a chokehold, punching him, and saying, 'You want some?' and 'This is my house.' " (*People v. Ayala*, *supra*, A165860.)

K.B. testified that as defendant and her boyfriend were still fighting inside the apartment, she ran outside and called 911 at approximately "3:50 a.m." In the meantime, "[t]he boyfriend and [defendant] separated, and [defendant] asked the boyfriend for a towel to wipe his face, which the boyfriend gave him." (*People v. Ayala*, *supra*, A165860.)

K.B. testified that after she called 911, she stayed outside and screamed for help. She saw a vehicle in the apartment building's parking lot with a Lyft sign. K.B. told the Lyft driver to move so the police could pull up, and also asked the driver to stay in the area to help her. Defendant then ran out of K.B.'s apartment, got into the Lyft vehicle, and the vehicle left.

"When K.B. returned to her apartment after [defendant] left, she found it 'torn apart' from the fight. The baby remained asleep in the bedroom. The boyfriend sustained a black eye, a bloody nose, a swollen face, and an eyebrow laceration from the fight; K.B. had pain and bruising on her face, pain and redness on her neck, and a black eye." (*People v. Ayala*, *supra*, A165860.)

At defendant's jury trial, both K.B. and J.P. testified as set forth above. K.B. testified that she thought the entire incident, of defendant kicking down the door and assaulting them, lasted about 30 minutes. (*People v. Ayala*, *supra*, A165860.)

4.

"K.B. also recounted prior instances of violent or jealous behavior by [defendant]. In September 2017, [defendant] was angry when her ex-boyfriend came over to her home. [Defendant] chased the ex-boyfriend with his car and smashed the windows of the ex-boyfriend's mother's home with a bat. A few weeks before September 2019, [defendant] came to K.B.'s door yelling to be let in and kicking the door; he left when K.B. called the police. The jury also heard that [defendant] told a defense investigator that he was angry that K.B. was having sex with someone else." (*People v. Ayala, supra,* A165860.)

R.S., another prosecution witness, testified that he had known K.B. for her entire life and she referred to him as her "uncle." R.S. testified that on the night of the incident with defendant, K.B. called him "a few minutes before 4:00 [a.m.]." K.B.was crying and emotional, and she said defendant "just kicked my door in." R.S. got dressed, got into his car, called 911, and arrived at K.B.'s apartment in "[l]ess than 15 minutes."

R.S. testified that on a previous occasion, he repaired K.B.'s apartment door and replaced the lock. When he arrived at her apartment after 4:00 a.m. on the morning of the incident, he discovered the door was split down the middle, the lock was damaged, the lock and face plate were hanging down, and screws were missing. R.S. testified the interior of the apartment was in disarray, the television was on the floor and damaged, and there was blood on the wall. He saw bruises on K.B.'s eyelid, eyebrow, and cheek, and her neck was red as if she had been choked. R.S. took photographs of K.B.'s injuries, the damage to the door, and disarray inside the apartment, and gave them to the police.

"[Defendant] was interviewed by police on September 26, 2019. The police detective who took his statement observed no visible injuries to [defendant]'s face or hands. [Defendant] told the detective that he had been worried about his infant [child's] welfare and about whether K.B. was drinking and having men stay over while the baby was present. [Defendant] decided, on the spur of the moment, to check on the baby on

his way home from the poker establishment. He knocked on K.B.'s door for 'quite a while,' and when she did not answer he 'flipped out' and 'pushed [his] way through the door' to check on his [child]. When he entered the bedroom, K.B. attacked him, swinging at him and driving him into the hallway. The boyfriend attacked [defendant] as well, and both K.B. and her boyfriend jumped on top of [defendant]. Eventually they either got off [defendant] or he pushed them off." (*People v. Ayala, supra*, A165860.)

**Defense Evidence**

Defendant testified at trial and gave "substantially the same account he relayed to the Modesto police detective." (*People v. Ayala, supra*, A165860.)

In explaining his first visit to K.B.'s apartment, defendant testified he went there "to check on his infant [child]. He saw K.B. and her boyfriend outside, went inside to check on his child, and then asked K.B. if she was drinking that night and what was going on. After she indicated he should leave, [defendant] grabbed a beer bottle from the table because he was frustrated, threw the beer into the swimming pool, and left. [Defendant] believed K.B. was intoxicated during their conversation, but K.B. said she had not been drinking that night." (*People v. Ayala, supra*, A165860.)

Defendant testified he left K.B.'s apartment, went back to his residence in Modesto, took a shower, and called for a Lyft driver to take him to a poker establishment in Turlock. Defendant testified he arrived at the poker room a little after midnight and consumed "as many as four" drinks. He called for a Lyft driver and left the poker room around 3:25 a.m., and intended to return to his residence in Modesto.

Defendant testified that after he left the poker establishment, he asked the Lyft driver to make a "pit stop" at K.B.'s apartment.

Defendant testified he arrived at K.B.'s apartment "a little after 3:45 [a.m.]." Defendant "admitted to breaking down the door, but claimed he intended only to check on his [child]; he was first attacked by K.B. and then by her boyfriend before he left. The

jury also heard a recording of his statement to the Modesto police." (*People v. Ayala, supra*, A165860.)

Defense Investigator Alana Dubois testified that at defendant's request, she obtained and printed a Lyft receipt from his email, and the receipt was introduced into evidence. The receipt showed that a Lyft driver named D. picked up defendant at 3:25 a.m. from North Kilroy Road in Turlock, and dropped him off at his residence on Lorry Avenue in Modesto at 3:56 a.m.[3]

## PROCEDURAL BACKGROUND

On May 25, 2021, defendant was convicted after a jury trial in the Superior Court of Stanislaus County of count 1, first degree residential burglary (§§ 459, 460), and the jury found true the allegation that another person who was not an accomplice was in the residence (§ 667.5, subd. (c)(21)); count 2, battery on a fellow parent, K.B. (§ 273.5, subd. (a)); count 3, assault with force likely to produce great bodily injury to J.P. (§ 245, subd. (a)(4)), and count 4, misdemeanor vandalism (§ 594, subd. (b)(2)(A)). Defendant admitted he had four prior strike convictions.

On June 22, 2021, the court denied defendant's request to dismiss the prior strike convictions and sentenced him to eight years for counts 2 and 3, and 25 years to life for count 1.

On appeal, defendant argued there was insufficient evidence to support the jury's finding that he entered K.B.'s apartment with felonious intent, the trial court abused its discretion when it denied his motion to dismiss the prior strike convictions, and the third strike sentence violated the state Constitution. In 2022, the nonpublished opinion was filed that rejected his arguments and affirmed the judgment. (*People v. Ayala, supra*, A165860.)

---

[3] In his postjudgment motion for discovery, defendant indicates the North Kilroy address is the location where the Lyft driver picked him up in Turlock, presumably referring to the poker establishment.

**DEFENDANT'S MOTION FOR DISCOVERY**

The instant appeal is from the trial court's ruling on a postconviction motion for discovery that defendant filed on September 14, 2023, pursuant to section 1054.9, in advance of filing a petition for writ of habeas corpus.

In his motion, defendant asserted that as a result of racial bias, he was "targetted [*sic*], arrested, and overcharged" by the police department, the district attorney " 'stacked' multiple unfounded counts," and he received a longer sentence than a similarly-situated Caucasian person in Stanislaus County.

Defendant alleged the Modesto Police Department and the prosecution failed to comply with discovery, defense counsel failed to investigate and obtain exculpatory evidence regarding the timeline of events, defense counsel was prejudicially ineffective, and his conviction was the result of "grave misconduct."

Defendant argues that as a result of racial bias, the police and district attorney allegedly failed to investigate, obtain, introduce, and provide exculpatory evidence based on the Lyft receipt and the Lyft driver's phone records. Defendant asserted the Lyft driver should have been called as a witness, and additional investigation should have been conducted about the distance between the poker establishment in Turlock and K.B.'s apartment in Modesto that would have "establish[ed] a time-line which shows defendant arrived at the scene at 3:46 AM and departed at or before 3:49 AM." Defendant further asserted this evidence would have contradicted K.B.'s testimony and the prosecution's trial theory that he was at K.B.'s apartment for 30 minutes to commit the offenses, and the absence of this evidence resulted in his "false conviction."

Defendant's motion listed 45 specific items for discovery, including police reports, witness statements, defense counsel's file, all work product from the police, district

attorney, and defense counsel, communications between the prosecutor and defense counsel, and jury records.[4]

**Initial Hearings**

On January 18, 2024, the court appointed the public defender to represent defendant on his motion for postjudgment discovery.[5] On February 9, 2024, the public defender declared a conflict, and the court appointed alternate defense counsel.

**The People's Responsive Brief**

On July 5, 2024, the People filed a responsive brief, and argued that defendant was seeking postjudgment discovery in order to file a motion under the section 745, the Racial Justice Act (RJA). The People argued defendant's motion was untimely because the RJA was already in effect prior to the start of his jury trial.[6] The People argued

---

[4] On November 17, 2023, defendant filed a petition for a writ of mandate in this court, for an order to compel the trial court to address his pending discovery motion. On March 21, 2024, this court denied the writ without prejudice. In its order that partially granted and denied defendant's discovery motion, the trial court acknowledged defendant's earlier writ of mandate, and stated that the discovery motion was not assigned to a courtroom until January 11, 2024.

[5] In its order that partially granted and denied defendant's discovery motion, the trial court stated that it granted defendant's request for appointment of counsel in order to assist with his motion, even though counsel was not authorized by statute.

[6] The RJA (§ 745) was enacted in 2020, went into effect in 2021, and only applied prospectively to cases where the judgment had not been entered prior to January 1, 2021. (Stats. 2020, ch. 317, § 1 (Assem. Bill No. 2542) (2019-2020 Reg. Sess.); former § 745, subd. (j); *People v. Wilson* (2024) 16 Cal.5th 874, 943; *People v. Thompson* (2022) 83 Cal.App.5th 69, 130.) Subsequent amendments to section 745 state that the RJA applies to "all cases in which judgment is not final." (§ 745, subd. (j)(1).)

Defendant's trial, conviction, and sentence occurred in 2021, and the judgment was affirmed in 2022. Where defendant "could have but failed to raise his Racial Justice Act claim below, he forfeited the claim and could not raise it for the first time on direct appeal." (*People v. Singh* (2024) 103 Cal.App.5th 76, 113; *People v. Lashon* (2024) 98 Cal.App.5th 805, 811–813; *People v. Midell* (2025) 113 Cal.App.5th 1060, 1072-1073.)

defendant's motion lacked merit because he failed to present a plausible factual foundation for his allegations. The People also raised specific objections to the 45 items listed in defendant's discovery motion.

The court granted the parties' motions for numerous continuances.

**The Trial Court's Hearing**

On January 17, 2025, the trial court conducted a hearing on defendant's motion for discovery. Defendant was present with counsel.

Defendant's counsel submitted on his motion. The prosecutor repeated the arguments in his responsive brief. The prosecutor also argued defendant's discovery request was based on "things that were already part of the trial and already part of discovery. There's nothing new here. He basically wants to retry his case. That's what his discovery request indicate[s]."

The court asked the prosecutor about a situation where a defendant learned about a violation of the RJA after he was convicted. The prosecutor acknowledged that if a petitioner learned about racial animus after his case was final, then such a claim may still be viable if it was previously unknown. However, the prosecutor asserted defendant's motion was based on information and evidence that he already had at the time of his trial.

The court asked the prosecutor whether a defendant could rely on the discovery statute to determine whether there was an actionable claim under the RJA, or if he needed an actionable claim before obtaining discovery. The prosecutor replied that a speculative scenario would lack any plausible factual basis, and the defendant must show more than mere allegations to obtain discovery. The court took the matter under submission.

**THE TRIAL COURT'S RULING**

On March 11, 2025, the trial court filed a lengthy and detailed order that partially granted and denied defendant's motion for discovery. The court stated that defendant's motion was filed in anticipation of a habeas petition, his motion "preview[ed] some of his anticipated claims," and he "fault[ed] the Modesto Police Department, Defense Counsel,

and the Stanislaus County District Attorney's Office for failing to sufficiently investigate a purported alibi witness—a Lyft driver—[D.A.]."

**Denial of Discovery Requests Based on Alleged Violations of the RJA**

The trial court stated defendant's "allegations of malfeasance appear to be tied to a potential Racial Justice Act claim." The court agreed with the People that the RJA provisions were effective and available to defendant at the time of his trial in 2021, and "[o]rdinarily, a failure to raise those claims below bars litigation of these claims on appeal," citing to *People v. Lashon, supra,* 98 Cal.App.5th 804. However, the court stated that since defendant raised defense counsel's alleged ineffective assistance for failing to raise his alleged RJA claim, it would determine whether his discovery requests would have been available if they had been raised at trial under the RJA.

First, the court addressed defendant's potential RJA claim that the Modesto Police Department and the district attorney exhibited racial bias "by not proactively conducting an investigation into a potential exculpatory witness," the Lyft driver. Defendant claimed the prosecution's theory of the case was that "the alleged assault resulting in his conviction occurred over the course of thirty minutes. To rebut this evidence and to impeach the credibility of the witnesses, [defendant] wished to present evidence from a 'Lyft' driver who drove [him] to the scene. [Defendant] claims to have presented a receipt, showing he was picked up at 3:25 a.m. from an address in Turlock, CA on the night of the incident. He also asserts that phone records establish that the victim called her uncle at 3:49 a.m., and called 9-1-1 at 3:50 a.m. By failing to investigate these claims, [defendant] alleges he was deprived [of] the opportunity to present exculpatory evidence that the drive-time from Turlock to the victim's home in Modesto meant he could only have been at the residence for a few minutes."

The trial court held defendant failed to present " 'a plausible factual foundation' " under the RJA that the police and/or prosecution exhibited bias by failing to investigate the Lyft evidence.[7]

Next, the trial court addressed defendant's discovery claims based on the RJA, that he was "overcharged based on his race and ethnicity," and that both the police department and district attorney's office were "hotbed[s] for the racially biased overcharging of the Hispanic community." The court found these claims were not supported by specific facts, and he failed to meet his burden to show such a discovery request would have succeeded.

Third, the court addressed defendant's claim that he was "disproportionately sentenced based on his race and ethnicity" as a result of racial bias by the police department and the prosecution. The court again found defendant "failed to assert specific facts to establish a plausible foundation for this claim" under the RJA.

The court concluded that "[h]aving found no plausible factual foundation supported by specific facts … [defendant] would not have been entitled to Racial Justice Act discovery at the trial court level."

**Partial Grant of Discovery Requests Based on Ineffective Assistance**

The court turned to defendant's separate allegations in support of his motion for discovery based on "a need to prepare a habeas claim on other grounds of ineffective assistance of counsel for a failure to conduct an adequate investigation into potentially exculpatory evidence."

---

[7]     "[I]n order to establish good cause for discovery under the Racial Justice Act, a defendant is required only to advance a plausible factual foundation, based on specific facts, that a violation of the Racial Justice Act 'could or might have occurred' in his case." (*Young v. Superior Court* (2022) 79 Cal.App.5th 138, 159; *People v. Superior Court* (*Lalo*) (2025) 114 Cal.App.5th 707, 712.)

The court found defendant was partially entitled to discovery under the limited provisions of section 1054.9 based on his ineffective assistance claims, and ruled on each of defendant's 45 requests for discovery.

The court granted defendant's motion for discovery of all evidence previously disclosed by the district attorney; the records from defendant's prior convictions that were charged as special allegations; transcriptions of 911 calls placed by K.B. and J.P.; transcriptions of all police interviews of J.P. and K.B.; police department reports about a " 'false police report' " made by K.B. between June 6, 2016 and June 6, 2017; all offers, threats, and inducements to obtain K.B.'s trial testimony; all pending charges against J.P.; and all plea offers and inducements to obtain J.P.'s trial testimony.

The trial court denied the rest of defendant's discovery motion because he failed to state facts indicating why he would have been entitled to that discovery at trial, the materials were not in possession of the People, and/or discovery was not authorized by statute, and other reasons as follows:  the "raw notes" and work product from the police department and prosecution; a copy of a section 997 motion for ancillary services, because it was not an item normally in the possession of the People; names, addresses, and phone numbers of the jurors; emails and text messages between the prosecuting attorney and various other individuals; the names, employment addresses, and medical reports of various first responders, because he failed to show the People intended to call them as witnesses; a social worker's notes and recorded interviews with K.B., because disclosure of these items may not be permitted without an order from the juvenile court; a general request for police records as vague and unspecific; Facebook posts by K.B. and text messages exchanged between K.B. and defendant; K.B.'s medical and psychiatric records; Lyft rideshare data; and the IP address names, addresses and phone numbers of all people logged onto the online live stream of petitioner's jury trial.

On March 28, 2025, the court granted the People's motion for an extension of time to respond to its discovery order.  The People did not file any response.

13.

On May 2, 2025, defendant filed a timely notice of appeal from the trial court's order of March 11, 2025.

## DISCUSSION

**Review of the Trial Court's Order**

As noted above, appellate counsel filed a notice of appeal followed by a brief that requested this court conduct an independent review of the record. The brief also included counsel's declaration that defendant was advised he could file his own brief with this court. On February 2, 2026, this court advised defendant by letter that he could file a supplemental letter or brief raising any arguable issues. Defendant did not do so.

It is settled, however, that when a party seeks review of a trial court's denial of motion for postconviction discovery pursuant to section 1054.9, that party must do so by filing a petition for writ of mandate in the appellate court and not an appeal. (*Steele*, *supra*, 32 Cal.4th at pp. 688, 692; *People v. Serrano* (2024) 106 Cal.App.5th 276, 292.)

We note that shortly after the trial court filed its order that partially granted and denied defendant's discovery motion, and before the notice of appeal was filed, defendant filed a petition for writ of mandate in this court, in *propria persona*, seeking review of the trial court's order that partially denied his discovery motion. (*Ayala v. Superior Court*, *supra*, F089679.) Defendant's counsel then filed a notice of appeal from the same order. Thereafter, this court filed an order that took judicial notice of the notice of appeal, and denied the petition for writ of mandate. Nearly one year later, appellate counsel filed the *Wende* brief in this appeal.

Given the procedural background of this case, rather than dismiss the appeal, we exercise our discretion to treat it as a petition for writ of mandate in the interests of judicial economy. (*People v. Payne* (1988) 202 Cal.App.3d 933, 937; *People v. Picklesimer* (2010) 48 Cal.4th 330, 335.)

**Analysis**

A motion for postjudgment discovery filed pursuant to section 1054.9 may be made in anticipation of filing a petition for writ of habeas corpus but before the petition is actually filed. (*Steele*, *supra*, 32 Cal.4th at p. 691.) However, the statute provides "only limited discovery. It does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses." (*Id*. at p. 695; *Barnett v. Superior Court* (2010) 50 Cal.4th 890, 894.) The trial court's ruling is reviewed for an abuse of discretion. (*Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 366.)

The trial court did not abuse its discretion when it partially denied defendant's discovery motion. The court properly identified that defendant forfeited his RJA claims by failing to bring them during trial or at sentencing (or on appeal, for that matter). The court denied discovery requests for several reasons, including that (1) defendant's motion contained no facts indicating why defendant would have been entitled to that discovery at trial, (2) the requested materials are not in possession of the People, and/or (3) the requested discovery is not authorized by section 1054.9. Defendant's requests lacked facts explaining why discovery was necessary, and his requests for personal identifying information of individuals involved in the case, jury members, and audience members, far exceeded the bounds of the statute.

We have reviewed the entirety of the record and find the trial court did not abuse its discretion in its lengthy ruling when it denied part of defendant's discovery motion.

## DISPOSITION

In the interest of judicial economy, we exercise our discretion and deem defendant's appeal challenging the trial court's order denying his postconviction discovery motion under section 1054.9, as a petition for writ of mandate.

The petition is denied for failing to establish the trial court abused its discretion in partially denying defendant's postconviction discovery motion under section 1054.9.